# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MOHAMED M. NASSER,

    Plaintiff,

v.

Case No. 16-11737
Hon. Gerald E. Rosen

DISTRICT DIRECTOR, USCIS DETROIT,
*et al.,*

    Defendants.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION TO REMAND

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     January 30, 2017

PRESENT:     Honorable Gerald E. Rosen
                     United States District Judge

## I. INTRODUCTION

Plaintiff Mohamed M. Nasser commenced this action in this Court on May 16, 2016, complaining of an excessive delay in the processing of his application for naturalization by the Defendant federal government agencies and officials. Under a provision of the Immigration and Nationality Act ("INA"), if the Government fails to make a determination on such an application "before the end of the 120-day period after the date on which [a statutorily mandated] examination

is conducted . . . , the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter," and the court may then "either determine the matter or remand the matter, with appropriate instructions," for determination by the appropriate agency. 8 U.S.C. § 1447(b). Plaintiff alleges that this statutory 120-day deadline has passed without a decision on his application, and he requests that the Court conduct a hearing, review his application for naturalization, and grant him a judgment declaring that he is entitled to U.S. citizenship.

By motion filed on August 9, 2016, Defendants now request that this matter be remanded to the U.S. Citizenship and Immigration Services ("USCIS") so that this agency may adjudicate Plaintiff's application and determine his eligibility for citizenship. In support of this motion, Defendants state that the USCIS is now prepared to review and resolve Plaintiff's application, with or without certain evidence that the agency has requested but Plaintiff has not yet provided, and they contend that the proper course under these circumstances is to remand to the agency, USCIS, that is charged with the responsibility to decide applications for naturalization in the first instance. Plaintiff filed a response in opposition to this motion on September 9, 2016, asserting that the Court has both the authority and the obligation to determine his eligibility for U.S. citizenship where, in his view,

the issue upon which his application turns has effectively been resolved in his favor, and where Defendants should be deemed to have forfeited their opportunity to adjudicate his application by virtue of their allegedly egregious conduct to date in processing this application.

Defendants' motion has been fully briefed by the parties. Having reviewed the parties' briefs and the record as a whole, the Court finds that the relevant facts, allegations and legal arguments are adequately presented in these written submissions, and that oral argument would not significantly aid the decisional process. Accordingly, the Court will decide Defendants' motion "on the briefs." See Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Mohamed M. Nasser is a citizen of Yemen who was admitted to the United States as a lawful permanent resident ("LPR") in May of 1992. His LPR status is based on an approved immediate relative visa petition that was filed on his behalf by Nagi El-Zokari, the husband of Plaintiff's alleged biological mother, Fatima Mansoor Mohamad El-Zokari.

In February of 2013, as Plaintiff was returning to the United States from a visit to Yemen, Immigration and Customs Enforcement ("ICE") served him with a

Notice to Appear ("NTA") for removal proceedings in immigration court. ICE alleged in this NTA that at some point after Plaintiff obtained LPR status, Nagi El-Zokari denied any relationship to Plaintiff and instead claimed that he had "helped smuggle [Plaintiff] into the United States as a favor to a friend." (Complaint, Ex. D, NTA.) In light of this information, ICE asserted that Plaintiff had secured LPR status through fraud or misrepresentation, and it directed Plaintiff to appear before an immigration court and show why he should not be removed from the United States based on the charges set forth in the NTA. (*See id.*) Before this hearing could be held, however, ICE cancelled the NTA on August 25, 2013 as improvidently issued, and the agency has never sought to reinstate the charges against Plaintiff or otherwise pursue this matter further.

On July 1, 2014, Plaintiff filed an application for naturalization with the USCIS. In an initial interview conducted on December 16, 2014, Plaintiff demonstrated insufficient proficiency in written English, but he passed this and all other pertinent tests during a second interview held on February 17, 2015. Nonetheless, he was told that a decision could not yet be made on his application. (*See* Complaint, Ex. A, 2/17/2015 Naturalization Interview Results.)

By letter dated March 13, 2015, the USCIS requested that Plaintiff submit further evidence in support of his application. In particular, Plaintiff was asked to

submit the results of DNA blood tests "[i]n order to demonstrate the existence of a biological relationship between [him] and [his] mother, Fatima Mansoor Mohamed El-Zokari." (Complaint, Ex. D, Form N-14, Request for Evidence.) In response to this request, Plaintiff's attorney asserted in a March 24, 2015 letter that the evidence sought by the USCIS was "not pertinent, nor relevant for [Plaintiff's] naturalization process," and he added that "[a]s a practical matter, DNA testing would not be possible at this time" because the U.S. embassy in Sana'a, Yemen was closed. (Complaint, Ex. D, 3/24/2015 Letter at 1.) Plaintiff's attorney further stated that Plaintiff's LPR status was "re-validated in 2013" by virtue of ICE's cancellation of the NTA issued at that time. (*Id.* at 1-2.) Accordingly, Plaintiff's attorney asked the USCIS to withdraw its request for evidence and schedule Plaintiff for an oath ceremony. (*See id.* at 1.)

After sending this March 2015 letter, Plaintiff's attorney attempted on a number of occasions to communicate with the USCIS regarding the status of Plaintiff's application for naturalization.[1] When over a year went by without a

---

[1] In response to some of these communications, USCIS representatives evidently advised Plaintiff's attorney that the agency was awaiting the results of a background investigation by the Federal Bureau of Investigation ("FBI"), but Defendants state without contradiction that this FBI investigation has since been completed. To the extent that Plaintiff has asserted claims in this case against the FBI, Defendants suggest that any such claims are now moot, and Plaintiff does not dispute this point in his response to Defendants' present motion.

decision on Plaintiff's application, Plaintiff brought suit in this Court on May 16, 2016, seeking the adjudication of his application for naturalization in this judicial forum or, in the alternative, an order directing the USCIS to adjudicate this application and schedule Plaintiff for an oath ceremony within thirty days or by a date set by the Court.

### III.  ANALYSIS

**A.      The Statutory Framework Governing This Action**

Before turning to the merits of the arguments advanced in Defendants' motion, the Court briefly surveys the statutory provisions that control the inquiry in this case.  In order to become a naturalized U.S. citizen, an applicant must meet various statutory requirements, including sufficient periods of residency and physical presence and a record of "good moral character" during these periods.  8 U.S.C. § 1427(a).  Of particular relevance here, an individual is eligible to apply for naturalization upon continuously residing in the United States for at least five years "after being lawfully admitted for permanent residence."  8 U.S.C. § 1427(a)(1).

Another INA provision elaborates on this prerequisite of lawful admission for permanent residence, stating that "[e]xcept as otherwise provided in this subchapter, no person shall be naturalized unless he has been lawfully admitted to

6

the United States for permanent residence in accordance with all applicable provisions of this chapter." 8 U.S.C. § 1429. The applicant for naturalization bears the "burden of proof" to "show that he entered the United States lawfully." 8 U.S.C. § 1429; *see also* 8 C.F.R. § 316.2(b) (providing that the applicant "shall bear the burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization, including that the applicant was lawfully admitted as a permanent resident to the United States, in accordance with the immigration laws in effect at the time of the applicant's initial entry or any subsequent reentry").

After conducting a statutorily mandated examination of the applicant, the Attorney General's designee determines whether the application should be granted or denied. 8 U.S.C. § 1446(d). If the application is denied, "the applicant may request a hearing before an immigration officer," 8 U.S.C. § 1447(a), and then may seek judicial review if the agency's decision remains unfavorable, *see* 8 U.S.C. § 1421(c). As noted at the outset, if the initial decision to grant or deny an application is not made "before the end of the 120-day period after the date on which the examination is conducted," the applicant "may apply to the United States district court for the district in which the applicant resides for a hearing on the matter." 8 U.S.C. § 1447(b). In this event, the district court "may either

determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b).

**B.     The Court Elects in Its Discretion to Remand This Case for a Prompt Agency Determination on Plaintiff's Application for Naturalization.**

In support of their present motion for remand, Defendants argue that the USCIS should be allowed to adjudicate Plaintiff's application for naturalization in the first instance, with judicial review available in the event that Plaintiff is not satisfied with the agency's determination. As Defendants observe, this Court has recognized in a prior decision that the pertinent case law "uniformly supports [the] contention that [the] [US]CIS generally should be given the opportunity to decide applications for naturalization in the first instance." *Khelifa v. Chertoff,* 433 F. Supp.2d 836, 842 (E.D. Mich. 2006) (surveying cases). For the reasons stated below, the Court elects to adhere to this usual practice in this case.

In *Khelifa,* 433 F. Supp.2d at 844, this Court identified three specific benefits to allowing the USCIS to make the initial decision on an application for naturalization. First, the Court cited the USCIS's "experience and expertise" in "determining whether an applicant meets all of the various criteria for naturalization," while observing that "the Court has neither." 433 F. Supp.2d at 844. Next, the Court noted that "any subsequent judicial review — a function that

***does*** lie within the Court's experience and expertise — would be considerably aided by an agency analysis and explanation as to why it acted as it did on Plaintiff's application." 433 F. Supp.2d at 844. Finally, the Court explained that "as a practical matter, now that all barriers to a determination seemingly have been removed, [the] [US]CIS is just as likely as this Court to promptly decide Plaintiff's application." 433 F. Supp.2d at 844.

Each of the considerations cited in *Khelifa* favors a remand in this case as well. As illustrated in the Court's survey of the relevant statutory provisions, and as both sides agree, the key issue to be resolved in adjudicating Plaintiff's application for naturalization is whether he was properly granted LPR status in 1992. If not, he cannot meet his statutory burden to "show that he entered the United States lawfully." 8 U.S.C. § 1429. The USCIS has "experience and expertise" in gathering the information pertinent to a determination whether an applicant lawfully entered the United States, while "the Court has neither." *Khelifa,* 433 F. Supp.2d at 844. Next, any eventual judicial review of an unfavorable decision on Plaintiff's application would be considerably aided by agency fact-gathering and analysis, as well as the required statement of the reasons for the denial of this application. *See Khelifa,* 433 F. Supp.2d at 844; *see also* 8 U.S.C. § 1446(d) (dictating that a decision on an application must be accompanied

by "the reasons therefor"). Finally, Plaintiff fails to suggest why this Court would be more likely to issue a prompt decision on his application, particularly where a court-ordered remand may include "appropriate instructions" directing that the USCIS adjudicate Plaintiff's application within a specified (and relatively brief) period of time. *See* 8 U.S.C. § 1447(b).

Notwithstanding these benefits to a remand, Plaintiff offers three reasons why the Court should deviate from this usual practice here. First, he contends that a remand is unnecessary because, in his view, the principal issue that will determine the fate of his application for naturalization has already been resolved in his favor. As noted above, the disposition of this application is likely to turn on whether Plaintiff lawfully obtained his LPR status. Throughout his response to Defendants' motion — and also in the March 24, 2015 letter from Plaintiff's counsel explaining that Plaintiff did not plan to comply with USCIS's request for DNA testing — Plaintiff insists that the Government has already "thorough[ly] investigat[ed]" his LPR status and determined that its allegations of fraud in obtaining this status "were baseless." (Plaintiff's Response Br. at 1; *see also* Complaint, Ex. D, 3/24/2015 Letter at 2.) It follows, according to Plaintiff, that there is no need for any further agency proceedings on his application for naturalization, and that the Court instead may convene a hearing and determine in

short order that this application should be granted.

As Defendants correctly observe, however, Plaintiff's argument on this point rests on flawed factual and legal premises. Although ICE served Plaintiff with a Notice to Appear ("NTA") in which it alleged that Plaintiff's LPR status was procured through fraud or misrepresentation, the agency then cancelled the NTA as improvidently issued. (*See* Complaint, Ex. D, NTA.) Contrary to Plaintiff's contention, nothing in the limited record of ICE's issuance and cancellation of the NTA suggests that the agency conducted any investigation or made any finding that the allegations in that document were baseless. Rather, as Defendants point out, the Department of Homeland Security "is vested with prosecutorial discretion regarding removal proceedings, and could have any number of reasons for deciding not to pursue [P]laintiff's removal." (Defendants' Reply Br. at 2-3 (citing *Reno v. American-Arab Anti-Discrimination Committee,* 525 U.S. 471, 483, 119 S. Ct. 936, 943 (1999)).)

Even assuming — based on pure speculation rather than supporting evidence — that ICE chose to abandon the removal proceedings against Plaintiff after investigating and concluding that the NTA's allegations could not be proven, this would not dictate the further conclusion, as urged by Plaintiff, that the lawfulness of his LPR status has been determined in his favor for purposes of

evaluating his application for naturalization. Rather, Defendants observe that two different agencies, ICE and USCIS, are tasked with removal and naturalization, and that the evidentiary burdens are allocated differently in these two contexts. In removal proceedings, ICE has the burden of proving by clear and convincing evidence that an alien admitted to the United States is removable. *See* 8 U.S.C. § 1229a(c)(3)(A); 8 C.F.R. § 1240.8(a). In naturalization proceedings before the USCIS, in contrast, the applicant bears the burden of establishing by a preponderance of the evidence that he meets each of the requirements for naturalization — including, as relevant here, that he was lawfully admitted for permanent residence. *See* 8 U.S.C. § 1429; 8 C.F.R. § 316.2(b). Consequently, even if ICE determined that it could not prove the allegations in the NTA by clear and convincing evidence, it does not ineluctably follow that Plaintiff will be able to meet his burden of demonstrating that his LPR status was lawfully obtained. For the reasons already stated, the investigation and factfinding entailed in resolving this latter question is better conducted, in the first instance, in proceedings before the USCIS, which has experience and expertise in addressing such matters.

Next, Plaintiff argues that the USCIS should be deemed to have forfeited its opportunity to consider and issue a decision on his application for naturalization,

in light of the purportedly "egregious" conduct in which this agency has engaged since Plaintiff filed his application. As examples of this "egregious" conduct, Plaintiff evidently points to (i) the USCIS's refusal to acknowledge that the lawfulness of Plaintiff's LPR status has already been determined, and (ii) this agency's request for DNA testing that, if agreed to, would expose Plaintiff's elderly and infirm mother to the dangerous conditions in Yemen, the country where she resides. Regarding the first example of the Government's egregious conduct, however, the Court already has explained that there has been no such finding that Plaintiff lawfully obtained his LPR status, so the USCIS cannot be said to have engaged in misconduct by failing to acknowledge this non-finding.

This leaves only Plaintiff's challenge to the USCIS's request for DNA testing to confirm a biological relationship between Plaintiff and Fatima Mansoor Mohamed El-Zokari. To the extent that Plaintiff complains that compliance with this request was not possible or, at a minimum, would have exposed his mother to unacceptable danger due to her age and poor health, Plaintiff does not explain why the USCIS acted so egregiously merely by *asking* for DNA tests, or why this agency should be charged with the knowledge that Plaintiff's mother was in no condition to honor this request. Rather, Plaintiff was free to decline this request, and he did so through counsel. Similarly, to the extent that Plaintiff maintains that

worsening conditions in Yemen precluded his mother from safely undertaking the travel necessary to carry out the USCIS's request for DNA testing, Plaintiff's counsel relayed this concern to the agency in his letter declining this request, and nothing in the record suggests that the USCIS has exerted pressure on Plaintiff to reconsider this refusal. To the contrary, the USCIS states without contradiction that it is "prepared . . . to adjudicate [P]laintiff's application for naturalization without the requested [DNA] evidence." (Defendants' Motion, Br. in Support at 10.)

Plaintiff seems to suggest, however, that the timing of the USCIS's request for DNA testing was problematic, where this testing could have been sought and carried out more safely in connection with the removal proceedings instituted against Plaintiff in 2013. (*See* Plaintiff's Response Br. at 7.)[2] Yet, the timing of the USCIS's request plainly was driven by ***Plaintiff's*** July 2014 filing of his application for naturalization, and the USCIS made its request a few months later, on March 13, 2015, shortly after Plaintiff completed a second interview on February 17, 2015 and passed language and other tests. The USCIS can hardly be

---

[2]Although Plaintiff characterizes the 2013 proceedings as seeking the "[r]escission" of his LPR status, (*see id.*), Defendants correctly point out that Plaintiff "was never in rescission proceedings," and that ICE instead issued the NTA with the intention of commencing removal proceedings, (*see* Defendants' Reply Br. at 1-2.)

charged with egregious conduct based on the decision of a different agency, ICE, to cancel an NTA served on Plaintiff in February of 2013, rather than instituting removal proceedings in which ICE conceivably could have requested DNA testing.  Indeed, given that it is Plaintiff's burden to demonstrate that he satisfies the requirements for naturalization, and given his presumed awareness, in light of the NTA, that questions might be raised as to the lawfulness of his LPR status, it seemingly is more appropriate to charge Plaintiff with the responsibility to secure any evidence, including DNA testing, that he might need to support his application for naturalization.  At a minimum, there is no basis for deeming the USCIS responsible for any prejudicial delay in pursuing DNA testing.

Finally, Plaintiff seeks to avoid a remand on the ground that the USCIS might retaliate against him in a naturalization proceeding, and he suggests that this fear of retaliation is supported by Defendants' "vague threat" in the brief in support of their motion that the USCIS is "prepared . . . to adjudicate plaintiff's application for naturalization without the requested [DNA] evidence."  (Plaintiff's Response Br. at 15-16 (quoting Defendant's Motion, Br. in Support at 10).)  This perceived "threat," however, is wholly a product of Plaintiff's own imagination, where Defendants' statement merely reflects the practical realities (i) that the USCIS cannot compel Plaintiff and his mother to submit to DNA testing, and (ii)

that the agency must proceed to adjudicate Plaintiff's application, with or without the requested DNA evidence.

Moreover, the Court addressed this same fear of retaliation in *Khelifa,* observing that the plaintiff in that case had not "identified any basis for this concern," 433 F. Supp.2d at 844, and precisely the same can be said here. Simply stated, Plaintiff offers nothing beyond pure speculation that the USCIS will somehow punish him for his refusal to comply with the agency's request for evidence. Even if the USCIS were to proceed in this fashion, "judicial review remains available to correct any such obvious abuse of agency discretion." *Khelifa,* 433 F. Supp.2d at 844.

Accordingly, the Court finds no reason in this case to deviate from the typical practice of remanding to the USCIS, so that this agency is afforded "the opportunity to determine Plaintiff's entitlement to citizenship in the first instance." *Khelifa,* 433 F. Supp.2d at 844. In so ruling, the Court holds the USCIS to its assurance that it will act promptly on Plaintiff's application, with or without the requested evidence of Plaintiff's biological relationship with Fatima Mansoor Mohamad El-Zokari.

## IV. **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' August 9, 2016 motion to remand application for naturalization to USCIS for adjudication (docket #9) is GRANTED. Through a separate order of remand, the Court will issue appropriate instructions to ensure that the USCIS acts promptly on this application.

                                        s/Gerald E. Rosen
                                        United States District Judge

Dated: January 30, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 30, 2017, by electronic and/or ordinary mail.

                                        s/Julie Owens
                                        Case Manager, (313) 234-5135